**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CAUSE OF ACTION
1919 Pennsylvania Avenue, NW, Suite 650
Washington, D.C. 20006,

Plaintiff,

v.

INTERNAL REVENUE SERVICE
1111 Constitution Avenue, NW
Washington, D.C. 20224,

Defendant.

**COMPLAINT**

This is an action under the Administrative Procedure Act challenging the failure of the Internal Revenue Service (IRS) to offer Plaintiff the opportunity to meaningfully comment on the IRS's proposed rules affecting Section 501(c)(4) social welfare organizations.

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 553(c), 701-706.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

3. This Court may grant Plaintiff injunctive relief pursuant to 28 U.S.C. § 2202, 5 U.S.C. §§ 705-06, and Fed. R. Civ. P. 65

**PARTIES**

4. Cause of Action is a nonpartisan, non-profit organization that uses public advocacy and legal reform strategies to ensure greater transparency in government and protect taxpayer interests and economic freedom.

5. The IRS is a bureau of the U.S. Department of the Treasury and qualifies as an "agency" within the meaning of 5 U.S.C. § 701(b).

## **STATEMENT OF FACTS**

### The History of IRS Abuse

6. The IRS has repeatedly been used by the powerful to punish political opponents.

7. For example, Elmer Lincoln Irey, head of the criminal division of the Treasury Department's tax enforcement branch from 1919 to 1946, admitted that he was ordered by Henry Morgenthau, Treasury Secretary to President Franklin Roosevelt, to file trumped-up criminal charges against former Treasury Secretary Andrew Mellon, even though Mellon was clearly innocent.

8. Beginning in the late 1950s, the civil rights leader Martin Luther King, Jr., several of his lawyers, and members of the Southern Christian Leadership Council, were repeatedly targets of IRS audits.

9. In the early 1960s, the Kennedy Administration established an "Ideological Organizations Audit Project" in the IRS to investigate the campaign contributions and tax-exempt status of dozens of groups deemed to be too "right wing."

10. In the 1970s, President Nixon redirected the "Ideological Organizations Audit Project" against groups deemed to be too "left wing" and also used onerous IRS tax audits and federal grants and contracts to harm his political enemies. Article II of Nixon's Articles of Impeachment provided:

> He has, acting personally and through his subordinates and agents, endeavored to obtain from the Internal Revenue Service, in violation of the constitutional rights of citizens, confidential information contained in income tax returns for purposes not authorized by law, and to cause, in violation of the constitutional rights of citizens, income tax audits or other income tax investigations to be initiated or conducted in a discriminatory manner.

H.R. Rep. No. 93-1305, at 3 (1974).

11. During the 1990s, the IRS audited and harassed a number of individuals and organizations that the Clinton Administration viewed as hostile to its agenda.

12. According to a report by the Treasury Inspector General for Tax Administration (TIGTA), in early 2010 the IRS began using inappropriate criteria to select Tea Party and other conservative organizations applying for tax-exempt status for review "based upon their names or policy positions instead of indications of potential political campaign intervention." TIGTA, Inappropriate Criteria Were Used to Identify Tax-Exempt Applications for Review (May 14, 2013). Upon information and belief, this conduct was directed by high-ranking IRS officials to punish political opponents of the Obama Administration and hamstring opposition to its policies. At all times relevant, the IRS and the responsible officials knew such conduct was inappropriate and illegal.

The IRS's Notice of Proposed Rulemaking

13. While the IRS acknowledged the impropriety of targeting conservative organizations for extra scrutiny, it has since taken further action to impose similar burdens on these same groups.

14. On November 29, 2013, the IRS issued a notice of proposed rulemaking (NPRM) revising the treatment of political activities by social welfare organizations under Section 501(c)(4) of the Internal Revenue Code. *See* Guidance for Tax-Exempt Social Welfare Organizations on Candidate-Related Political Activities, 78 Fed. Reg. 71,535 (proposed Nov. 29, 2013) (to be codified at 26 C.F.R. pt. 1).

15. The proposed rules revise Treas. Reg. § 1.501(c)(4)-1(a)(2)(ii) to state that "[t]he promotion of social welfare does not include direct or indirect candidate-related political activity." 78 Fed. Reg. 71,535, 71,537. The proposed rules define candidate-related activity to

include express advocacy communications, public communications close in time to an election, and election-related activities.  *Id.* at 71,538-40.

16. The proposed rules would inflict a tremendous burden on non-profit organizations by classifying a significant amount of non-political activity as "candidate-related political activity," including nonpartisan voter guides, speaker forums, pamphlets, and voter-registration drives.  Since many conservative groups use these activities to educate the public on matters like the Constitution and government spending, they are at risk of losing their tax-exempt status if the IRS finalizes the proposed rules.

17. In addition to jeopardizing the tax-exempt status of many 501(c)(4) groups, the proposed rules impose voluminous recordkeeping requirements on small non-profits, particularly those that rely on volunteer support.  *See* Cleta Mitchell, Comments on the Collection of Information under the Proposed Guidance for Tax-Exempt Social Welfare Organizations (Jan. 28, 2014).  *See* Ex. 1.

18. The IRS claims that the proposed rules are necessary to more easily define non-exempt political activities for 501(c)(4) organizations.  However, this proposal is simply a back door attempt to stifle political opponents, to protect Administration policies, and to restrict and hamper grassroots education regarding the Constitution, limited-government, and economic freedom.  As Chairman of the House Ways and Means Committee, David Camp, observed: "The new regulation so closely mirrors the abused tea-party group applications, it leads me to question if this new proposed regulation is simply another form of targeting."  Kimberley A. Strassel, *IRS Targeting: Round 2*, Wall Street J. (Dec. 12, 2013), http://online.wsj.com/news/articles/SB10001424052702303932504579254521095034070.

19. The IRS may have been motivated in part to issue the NPRM based on pressure from leftist political partisans. On July 27, 2011, two non-governmental organizations, each connected to and funded by Obama Administration supporters, petitioned the IRS to issue rules preventing 501(c)(4) organizations from engaging in political speech. *See* Petition for Rulemaking from Democracy 21 & Campaign Legal Center to the Internal Revenue Serv. (July 27, 2011), *available at* http://www.democracy21.org/uploads/D21_and_CLC_Petition_to_IRS_7_27_2011.pdf.

20. On April 9, 2013, yet another non-governmental organization, this one also connected to and funded by Obama Administration supporters, filed another petition for IRS rules preventing 501(c)(4) organizations from engaging in political speech. *See* Petition for Rulemaking from Citizens for Responsibility & Ethics in Washington to the Internal Revenue Serv. (Apr. 9, 2013), *available at* http://crew.3cdn.net/9e6dd1e2b163dbb240_i1m6b5q6u.pdf.

21. While the petitions purport to be about fair elections, it appears that their true intent was to protect the Administration from criticism. The April 9, 2013 petition stated: "The results of those elections [2010 and 2012] demonstrate even more compellingly the critical need for the IRS to revise its regulations" and ban 501(c)(4) organizations from engaging in political speech. *Id.* at 16.

22. Shortly thereafter, an IRS press release announced a "Proposed Guidance for Tax-Exempt Social Welfare Organizations" and stated: "In defining the new term, 'candidate-related political activity,' Treasury and the IRS drew upon existing definitions of political activity under federal and state campaign finance laws, other IRS provisions, *as well as suggestions made in unsolicited public comments*." *See* Ex. 2.

23. Upon information and belief, the "unsolicited public comments" included communications and meetings with Administration partisans that support limiting or silencing political speech by citizens with "conservative," "constitutional, "right-wing" or "Tea Party" views.

Cause of Action's FOIA Request

24. Members of the public, including Cause of Action, are concerned that the IRS rulemaking process has been tainted by politics.

25. Among other things, it is possible that there was consultation and perhaps even coordination between the Administration, its partisans, and the IRS itself.

26. Consequently, Cause of Action sent a FOIA request to the IRS on December 24, 2013, seeking access to four categories of records regarding the IRS's proposed rules. *See* Ex. 3.

27. Item 1 seeks copies of the "unsolicited public comments" that the IRS "drew upon" in defining "candidate-related political activity" in the NPRM, as well as any agency correspondence with the commenters. Through this item, Cause of Action seeks to understand what information the IRS relied upon in crafting the new rules, and what outside groups played a role in its actions.

28. Item 2 seeks correspondence between IRS employees within the Tax Exempt and Government Entities (TEGE) Division and those same IRS employees and the public regarding the revisions to the qualification requirements for tax-exempt status under section 501(c)(4). This request includes communications between the IRS and certain groups/individuals that may have influenced the IRS's decision-making through petitions for rulemaking and litigation.

29. Item 3 seeks records of correspondence to and from Amy F. Giuliano, Office of Associate Chief Counsel, TEGE, pertaining to the NPRM. As the principal author of the

proposed regulations, records containing communications to and from Giuliano would reveal whom the IRS consulted during the rulemaking process.

30. Item 4 seeks records of communications between the IRS and any employee of the Office of Management and Budget and/or the Office of the White House Counsel regarding the proposed redefinition of "candidate-related political activity." This item would reveal whether the Administration pressured the IRS to issue the proposed guidance.

31. The IRS responded to Cause of Action by letter dated January 30, 2014. Ex. 4. In its letter, the IRS invoked a ten-day statutory extension under 5 U.S.C. § 552(a)(6)(B)(i), therefore extending its response date to February 13, 2014. *Id.* The IRS noted, however, that it would still be unable to process the request by February 13, 2014. *Id.* Accordingly, the IRS further extended the response date to May 16, 2014. *Id.*

32. Cause of Action intends to submit a comment to the IRS in response to the NPRM.

33. In order to comment meaningfully on the proposed rules, a right guaranteed by Congress to infuse a measure of public accountability into administrative practices, Cause of Action needs access to the requested records at least several days before the comment period ends on February 27, 2014.

34. By its own admission, the IRS will not produce documents until after the close of the comment period. Without access to the records and the full opportunity to evaluate the IRS's proposed rules, Cause of Action's right to effectively comment will be irreparably harmed.

## CLAIM FOR RELIEF

**Violation of the Administrative Procedure Act: Failure to Allow Meaningful Comment**

35. Cause of Action repeats paragraphs 1-34.

36. The Administrative Procedure Act requires agencies to give the public an opportunity to participate in the rulemaking process through submission of written comments. 5 U.S.C. § 553(c).

37. By failing to produce the requested records before the close of the comment period, the IRS has effectively denied Cause of Action's right to meaningfully comment. Cause of Action cannot fully judge the merits of the proposed rules without knowing what animated their form.

38. The IRS's refusal to disclose the relevant records before the close of the comment period constitutes final agency action that is arbitrary, capricious, and otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A).

39. Plaintiff has exhausted all administrative remedies.

## RELIEF REQUESTED

WHEREFORE, Cause of Action respectfully requests that the Court:

A. Order the IRS to delay issuing a final rule on the NPRM until the IRS produces responsive records;

B. Order the IRS to re-open the comment period on the NPRM after the IRS produces all responsive records;

C. Award Cause of Action such costs and attorney fees as it may be entitled to under law;

D. Grant such other relief as the Court may deem just and proper.

Dated:  February 5, 2014    Respectfully submitted,

/s/ Daniel Z. Epstein
Daniel Z. Epstein
D.C. Bar No. 1009132
Cause of Action
1919 Pennsylvania Avenue, NW
Suite 650
Washington, D.C. 20006
(202) 499-4232 (telephone)
(202) 330-5842 (facsimile)
daniel.epstein@causeofaction.org

/s/ Reed D. Rubinstein
Reed D. Rubinstein, Partner
D.C. Bar No. 440153
Dinsmore & Shohl LLP
801 Pennsylvania Avenue, NW
Suite 610
Washington, D.C. 20004
(202) 372-9120 (telephone)
(202) 372-9141 (facsimile)
reed.rubinstein@dinsmore.com

*Attorneys for Plaintiff*